AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the

Middle District of Florida

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| IRIS YANETH VILLAFRANCA, a/k/a Iris Yaneth Oseguera, a/k/a Iris Rodriguez | ) | Case No. |
| MARIO LISANDRO FLORES MORADEL | ) | 6:25-mj-1397 |
| CRISTOFER OSEGUERA GIRON | ) | |
| | ) | |
| *Defendant(s)* | | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____10/30/2015 through 8/23/2022_____ in the county of _____Orange_____ in the ____Middle____ District of _____Florida_____ , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 371 | Conspiracy to Operate an Unlicensed Money Transmitting Business, and |
| 18 U.S.C. § 371 | Conspiracy to Defraud the United States |

This criminal complaint is based on these facts:

See Attached Affidavit

☑ Continued on the attached sheet.

_____
*Complainant's signature*

IRS-CI Special Agent Jennifer Rey
*Printed name and title*

Sworn to before me and signed in my presence.

Date: _____April 17, 2025_____

_____
*Judge's signature*

City and state: _____Orlando, Florida_____        ROBERT M. NORWAY, U.S. Magistrate Judge
*Printed name and title*

STATE OF FLORIDA                                CASE NO. **6:25-mj**-1397

COUNTY OF ORANGE

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Jennifer Rey, being sworn to tell the truth, state the following information:

1.    I am a Special Agent ("SA") with the United States Department of Treasury, Internal Revenue Service, Criminal Investigation ("IRS-CI") in the Tampa field office. I have been employed in that capacity since May 2001.

2.    I have been investigating IRIS YANETH VILLAFRANCA, a/k/a Iris Yaneth Oseguera, a/k/a Iris Rodriguez, MARIO LISANDRO FLORES MORADEL, CRISTOFER OSEGUERA GIRON, CONSPIRATOR 1, CONSPIRATOR 2, CONSPIRATOR 3, CONSPIRATOR 4, CONSPIRATOR 5, and others for engaging in a scheme to create an off-the-books payroll. The conspirators used shell companies to, among other things, (1) run an unlicensed check cashing and cash courier service business that unlawfully cashed approximately $89 million for subcontractors working in the construction industry; (2) defraud the Internal Revenue Service out of millions of dollars of income and employment taxes by creating an off-the-books cash payroll for the subcontractors, making it look like the required federal taxes were being paid, and concealing the scheme; and (3) defraud workers' compensation insurance providers by providing them with false and fraudulent information about, among other things, the number of workers being covered by the workers' compensation insurance and the amount workers would be paid.  Through this scheme, the conspirators facilitated the

1

employment of undocumented aliens working illegally in the United States. Their actions caused a significant tax loss to the United States.

3.    The conspirators, led by VILLAFRANCA, entered into agreements with individuals running construction businesses and supervising day laborers in the construction industry, or "subcontractors." VILLAFRANCA and her conspirators charged the construction subcontractors a fee to participate in this scheme.

4.    The facts in this affidavit are based on my personal observations and investigation, my training and experience, information obtained from law enforcement databases, other IRS agents and analysts, interviews with witnesses, subpoenaed records from domestic financial institutions and other third parties, and publicly available information. All observations I did not personally make were related to me by the individuals who made them.

5.    Because I am submitting this affidavit for the limited purpose of securing a criminal complaint, I have not included every fact that I know about this investigation. Instead, I have set forth only those facts that I believe are necessary to establish probable cause that IRIS YANETH VILLAFRANCA, MARIO LISANDRO FLORES MORADEL, and CRISTOFER OSEGUERA GIRON (1) conspired to operate an unlicensed money transmitting business, in violation of 18 U.S.C. §§ 1960(b)(1)(A), 1960(b)(1)(B), and 1960(b)(1)(C) objects, all in violation of 18 U.S.C. § 371, and (2) conspired to defraud the United States by impeding, impairing, obstructing, and defeating the lawful government functions of the Internal

2

Revenue Service in the ascertainment, computation, assessment, and collection of federal income and employment taxes

**The Defendants**

6.    From public records, immigration records, and driver's license information, among other sources, I learned the following about the defendants and their conspirators:

7.    IRIS YANETH VILLAFRANCA ("VILLAFRANCA"), a Honduran national, resided in Orange County, Seminole County, or Lake County within the Middle District of Florida, from at least October 2015 through at least August 2022.

8.    MARIO LISANDRO FLORES MORADEL ("FLORES"), a Honduran national, resided in Orange County, Seminole County, or Osceola County, within the Middle District of Florida, from at least October 2015 through at least August 2022.

9.    CONSPIRATOR 2 resided in Orange County or Seminole County within the Middle District of Florida, from at least October 2015 through at least August 2022.

10.    CRISTOFER ALFREDO OSEGUERA GIRON ("OSEGUERA"), a Honduran national, resided in Orange County or Seminole County, within the Middle District of Florida, from at least October 2015 through at least August 2022.

11.    CONSPIRATOR 5 provided accounting and tax preparation services within the Middle District of Florida and elsewhere from at least October 2015

3

through at least August 2022. VILLAFRANCA referred FLORES, OSEGUERA, and others known and unknown to CONSPIRATOR 5.

12.    During this investigation, IRS agents interviewed CONSPIRATORS 2 and 5, who each provided corroborating information about the operation of the defendant's scheme. CONSPIRATORS 2 and 5 have each signed plea agreements with the United States have agreed to cooperate in the government's investigation and prosecutions.

13.    During the investigation, IRS agents also interviewed FLORES, who provided several materially false statements about the participants in the scheme, while also acknowledging that he was involved in the operation of at least one of the Shell Company described below.

### The Shell Companies

14.    Florida state records show that MZA Construction Inc. ("MZA") was a corporation registered with the Florida Department of State on or about October 30, 2015. VILLAFRANCA and CONSPIRATOR 1 registered, and caused the registration of MZA Construction Inc. IRS records show that VILLAFRANCA and CONSPIRATOR 1 also caused a federal employer identification number to be issued for the company.

15.    Florida state records show that ADD Remodeling Services, Inc. ("ADD") was a corporation registered with the Florida Department of State on or about October 3, 2017. VILLAFRANCA and FLORES registered, and caused the registration of ADD Remodeling Service, Inc. IRS records show that

4

VILLAFRANCA and FLORES also caused a federal employer identification number to be issued for the company.

16.    Florida state records show that FAR Remodeling Services, Inc. ("FAR") was a corporation registered with the Florida Department of State on or about June 10, 2017. VILLAFRANCA and CONSPIRATOR 2 registered, and caused the registration of FAR Remodeling Service, Inc. According to CONSPIRATOR 2, VILLAFRANCA and CONSPIRATOR 5 also obtained a federal employer identification number for the company.

17.    Florida state records show that EZM Remodeling Services, Inc. ("EZM") was a corporation registered with the Florida Department of State on or about May 29, 2017. VILLAFRANCA and CONSPIRATOR 3 registered, and caused the registration of EZM Remodeling Services, Inc. IRS records show that VILLAFRANCA and CONSPIRATOR 3 also obtained a federal employer identification number for the company.

18.    Florida state records show that ODZ Renovations, Inc. ("ODZ") was a corporation registered with the Florida Department of State on or about November 23, 2019. VILLAFRANCA and CONSPIRATOR 4 registered, and caused the registration of ODZ Renovations, Inc.IRS records show that VILLAFRANCA and CONSPIRATOR 4 also obtained a federal employer identification number for the company.

19.    CAO Remodeling Services, Inc. ("CAO") was a corporation registered with the Florida Department of State on or about November 23, 2019. The letters

"CAO" signified "CRISTOFER ALFREDO OSEGUERA." VILLAFRANCA and OSEGUERA registered, and caused the registration of CAO Remodeling Services, Inc. IRS records show that VILLAFRANCA and OSEGUERA also obtained a federal employer identification number for the company.

20.    Collectively, the defendants and their conspirators opened MZA, ADD, FAR, EZM, ODZ, and CAO ("the shell companies") and operated them in furtherance of the scheme, during the approximate years set forth below:

| Approximate Years | Shell Company Name | Purported Owner |
|---|---|---|
| 2016–2018 | MZA | CONSPIRATOR 1 |
| 2017–2018 | ADD | FLORES |
| 2018–2019 | FAR | CONSPIRATOR 2 |
| 2019–2020 | EZM | CONSPIRATOR 3 |
| 2020–2021 | ODZ | CONSPIRATOR 4 |
| 2020–2022 | CAO | OSEGUERA |

**Affiant Training and Background**

21.    My duties as a SA with IRS-CI include the investigation of possible criminal violations of the Internal Revenue Laws (Title 26, United States Code), the Bank Secrecy Act (Title 31, United States Code), the Money Laundering Control Act (Title 18, United States Code), and other related offenses. Throughout my career, I have conducted several criminal investigations, during which I gained experience

6

and familiarity with the above sections of the United States Code. During the performance of my duties, I have participated in the execution of numerous arrest warrants. I have experience in analyzing tax returns, accounting books, and other financial records. I graduated from the Criminal Investigator Training Program at the Federal Law Enforcement Training Center in Glynco, Georgia in August 2001. I graduated from the Special Agent Investigative Techniques program at the National Criminal Investigation Training Academy in Glynco, Georgia in November 2001. In these last two programs, I studied a variety of law enforcement, criminal investigator, and tax crime issues, including search and seizure, violations of the Internal Revenue laws, and Internal Revenue Service procedures and policies in criminal investigations. As an IRS-CI SA, I have participated in various investigations pertaining to tax fraud and money laundering. I earned a Bachelor's Degree in Accounting from Florida International University in 2000.

### Background on Unlicensed Check Cashing and Cash Courier Services

22.     Through my training and experience, I know that a "money transmitting business" was a business that, among other things, cashed checks and transported cash. To legally operate as a money transmitting business, the business was required to register with the appropriate state and federal authorities.

23.     The laws of the State of Florida required that a person or a business have a license to conduct a money transmitting business. Florida law punished as a felony the unlicensed operation of a money transmitting business involving currency,

or payment instruments of a value totaling or exceeding $300 in any twelve-month period.

24.    Title 31, United States Code, Section 5330(a), and regulations promulgated pursuant to that statute, required individuals who owned or controlled a money transmitting business to register the business with the Secretary of the Treasury no later than 180 days after the date on which the business was established.

25.    I determined that the conspirators did not have a license from the State of Florida to operate a money transmitting business, nor did they register any money transmitting businesses with the Secretary of the Treasury.

26.    Bank 1, Bank 2, Bank 3, Bank 4, and Bank 5 each had branch locations in the Middle District of Florida and elsewhere that operated in interstate commerce. A review of subpoenaed bank records revealed that the conspirators used these banks to operate their unlicensed money transmitting business.

### Background on Taxes and the Internal Revenue Service

27.    Through my training and experience, I know that the Internal Revenue Service ("IRS") was an agency of the U.S. Department of Treasury responsible for administering the tax laws of the United States and collecting taxes owed to the United States.

28.    In addition, employers were required to file an IRS Form 941, Employer's Quarterly Federal Tax Return ("Form 941"), which was used to report all wages paid to employees and all federal employment taxes withheld from those wages. Most employers were required to file Forms 941 four times per year—one

8

Form 941 for each quarter ending March 31; June 30; September 30; and December 31.

29.    IRS Form 940, Employer's Annual Federal Unemployment (FUTA) Tax Return ("Form 940"), was used by employers to report their annual Federal Unemployment Tax.

30.    IRS Form 1120-S, U.S. Income Tax Returns for an S Corporation ("Form 1120-S"), was used by companies to report the income, gains, losses, deductions, credits, etc. of a domestic corporation or other entity for any tax year covered by an election to be treated an "S corporation" for tax purposes.

31.    IRS Form 1099-MISC, Miscellaneous Income ("Form 1099"), was used to report, among other things, certain payments made to individuals in connection with a trade or business.

32.    IRS Form 1096, Annual Summary and Transmittal of U.S. Information Returns ("Form 1096"), was used to transmit certain paper forms, including Forms 1099, to the IRS. Form 1096 was signed under penalties of perjury.

33.    IRS Form 1040, U.S. Individual Income Tax Return, ("Form 1040"), was used by U.S. taxpayers to file an annual income tax return.

34.    The Electronic Federal Tax Payment System ("EFTPS") was a U.S. Department of Treasury system used to pay federal taxes.

## Background on Workers' Compensation Insurance

35.     Company 1 was an insurance agency that operated in Florida. Company 1 secured workers' compensation insurance policies from nationwide insurance companies.

36.     Company 2 was an insurance agency that operated in Florida. Company 2 secured workers' compensation insurance policies from nationwide insurance companies.

37.     Company 3 was an insurance agency that operated in Florida. Company 3 secured workers' compensation insurance policies from nationwide insurance companies.

38.     A business that provided construction services in the State of Florida was required by Florida law to possess workers' compensation insurance for its workers. Florida law also required all contractors to provide evidence that all subcontractors possessed workers' compensation insurance before any work began on a construction project.

39.     A construction company typically could not work in the State of Florida without first providing proof of workers' compensation insurance in the form of a Certificate of Liability Insurance ("COI"). The COI would declare that the subcontractor had the requisite insurance coverage, but did not usually include the number of workers or the amount of payroll covered by the insurance policy.

10

## PROBABLE CAUSE

### VILLAFRANCA, FLORES, and OSEGUERA Conspired with Others to Run an Unlicensed Money Transmitting Business

40.     A review of bank account activity and interviews of several witnesses indicates that VILLAFRANCA, FLORES, and OSEGUERA conspired with others, known and unknown, to run an unlicensed money transmitting business.

41.     The conspirators ran an unlicensed check cashing and cash courier service business that unlawfully cashed and transported approximately $89 million for the construction subcontractors. Through interviewing witnesses, I learned that the conspirators, led by VILLAFRANCA, charged fees for their check cashing and cash courier services that was a percent of the amount of the checks being cashed.

42.     Through interviewing witnesses, I learned that VILLAFRANCA and CONSPIRATOR 1, and others known and unknown, directed the construction subcontractors to cause contractors to draft checks in the names of the shell companies. VILLAFRANCA and CONSPIRATOR 1 also caused the construction subcontractors to wire money to shell company bank accounts. These funds were usually payments issued by a contractor for work performed by the subcontractors. The conspirators then generally had the checks cashed and delivered the cash to the subcontractors, less the conspirators' fee.

43.     The conspirators operated their money transmitting businesses without obtaining the required licenses from the State of Florida, without registering federally

11

with the Secretary of the Treasury, and intending that the funds that were transported and transmitted be used to promote and support unlawful activity.

44.    My analysis of subpoenaed records revealed that, as a part of the check cashing and cash courier service business, VILLAFRANCA, and others known and unknown, provided the construction subcontractors or caused the construction subcontractors to be provided with certificates of insurance, or proof of workers' compensation insurance. Through interviews of witnesses, I learned that VILLAFRANCA, and others known and unknown, helped construction subcontractors to obtain work that they otherwise would have been unable to obtain.

45.    My analysis of subpoenaed bank records and interviews with witnesses VILLAFRANCA instructed and caused the conspirators to open bank accounts in the names of the shell companies at Bank 1, Bank 2, Bank 3, Bank 4, and Bank 5. Bank records indicate that FLORES, OSEGUERA, and others known and unknown, were authorized to deposit checks and withdraw cash from the shell company bank accounts.

46.    Bank records indicate that FLORES, OSEGUERA, and others known and unknown, sometimes went to physical branch locations owned by Bank 1, Bank 2, Bank 3 and Bank 4, and deposited and caused checks to be deposited in person into bank accounts held in the names of the shell companies.

47.    After the checks had posted, FLORES, OSEGUERA, and others known and unknown, drove back to the bank to withdraw cash and caused cash to be withdrawn from the shell company bank accounts.

12

48.     FLORES, OSEGUERA and others known and unknown, caused the cash to be transported from the bank to VILLAFRANCA and CONSPIRATOR 1. Text messages indicate that VILLAFRANCA and CONSPIRATOR 1 and others known and unknown, typically counted the cash, divided it into envelopes, and provided the envelopes to FLORES and OSEGUERA.

49.     After VILLAFRANCA, CONSPIRATOR 1, and others known and unknown, counted the cash and organized it, FLORES, OSEGUERA, and others known and unknown picked up the cash from VILLAFRANCA and/or CONSPIRATOR 1, and delivered it to the subcontractors.

50.     FLORES, OSEGUERA, and others known and unknown, met the subcontractors in different parking lots across the Middle District of Florida and gave them the cash; the subcontractors then used the money to pay their workers. VILLAFRANCA, FLORES, OSEGUERA, and their conspirators knew that the subcontractors were using the cash they received to pay the wages of undocumented workers.

51.     My review of bank records indicates that VILLAFRANCA, FLORES, OSEGUERA, and their conspirators sometimes transferred and caused the transfer of money from shell company to shell company to make sure there were sufficient funds in the shell company bank accounts to withdraw cash.

52.     VILLAFRANCA and CONSPIRATOR 1, and others known and unknown, would manage the flow of checks and cash from the subcontractors to the shell companies' bank accounts, and back to the subcontractors. VILLAFRANCA

13

and CONSPIRATOR 1 maintained books and records that both recorded the cash and kept track of the money and the fees they charged for their services.

53.    VILLAFRANCA, and others known and unknown, would cause certificates of insurance to be provided to contractors on behalf of the subcontractors. By funneling payroll through the shell companies, the contractors and the subcontractors could disclaim responsibility for ensuring (1) that adequate workers' compensation insurance was provided, and (2) that the workers were legally authorized to work in the United States.

54.    In furtherance of the conspiracy, the conspirators did the following:

<u>MZA</u>

55.    A review of bank records indicates that CONSPIRATOR 1 opened bank accounts at Bank 1, Bank 2, Bank 3, and Bank 4 in the name of MZA.

56.    CONSPIRATOR 1, VILLAFRANCA, and their conspirators deposited and caused the deposit of funds and withdrew and caused the withdrawal of cash in the following amounts, among other deposits and withdrawals:

| Approximate Date | Bank | Account Number | Amount | Withdrawal or Deposit |
|---|---|---|---|---|
| August 5, 2016 | Bank 1 | x2678 | $102,165 | Deposit |
| August 26, 2016 | Bank 1 | x2678 | $120,000 | Cash Withdrawal |
| September 8, 2016 | Bank 2 | x7882 | $15,600 | Wire Deposit |
| September 23, 2016 | Bank 1 | x2678 | $170,000 | Cash Withdrawal |
| November 18, 2016 | Bank 4 | x1125 | $73,020 | Deposit |

14

| Approximate Date | Bank | Account Number | Amount | Withdrawal or Deposit |
|---|---|---|---|---|
| November 18, 2016 | Bank 4 | x1125 | $80,000 | Cash Withdrawal |
| November 23, 2016 | Bank 4 | x1125 | $15,292 | Deposit |
| November 23, 2016 | Bank 4 | x1125 | $23,151 | Deposit |
| November 28, 2016 | Bank 2 | x7882 | $63,000 | Wire Deposit |
| November 29, 2016 | Bank 1 | x2678 | $354,014 | Cashier's Check Withdrawal |
| December 6, 2016 | Bank 4 | x1125 | $354,014 | Cashier's Check Deposit |

57.     I analyzed records obtained from FINCEN. I learned that from 2016 through 2019, CONSPIRATOR 1, VILLAFRANCA, and their conspirators cashed and caused to be cashed approximately $25,594,671 million through MZA bank accounts and other check cashing businesses.  VILLAFRANCA, CONSPIRATOR 1, and their conspirators caused the delivery of cash back to the subcontractors.

## ADD

58.     A review of bank records indicates that FLORES opened bank accounts at Bank 1, Bank 2, Bank 3, and Bank 4 in the name of ADD.

59.     FLORES, VILLAFRANCA, and their conspirators deposited and caused the deposit of funds and withdrew and caused the withdrawal of cash in the following amounts, among other deposits and withdrawals:

15

| Approximate Date | Bank | Account Number | Amount | Withdrawal or Deposit |
|---|---|---|---|---|
| January 2, 2018 | Bank 1 | x0796 | $50,000 | Cash Withdrawal |
| January 11, 2018 | Bank 1 | x0796 | $77,872 | Deposit |
| January 11, 2018 | Bank 1 | x0796 | $14,713 | Deposit |
| January 18, 2018 | Bank 1 | x0796 | $40,000 | Cash Withdrawal |
| May 3, 2018 | Bank 1 | x0796 | $77,286 | Deposits |
| May 4, 2018 | Bank 1 | x0796 | $50,000 | Cash Withdrawal |
| May 11, 2018 | Bank 1 | x0796 | $42,941 | Deposit |
| May 11, 2018 | Bank 1 | x0796 | $50,000 | Cash Withdrawal |
| May 21, 2018 | Bank 1 | x0796 | $136,198 | Withdrawal |

60.    I analyzed records obtained from FINCEN. I learned that from 2017 through 2018, FLORES, VILLAFRANCA, and their conspirators cashed and caused to be cashed approximately $15,702,665 through ADD bank accounts and other check cashing businesses.  VILLAFRANCA, ZELAYA ARTICA, and their conspirators caused the delivery of cash back to the subcontractors.

## FAR

61.    A review of bank records indicates that CONSPIRATOR 2 opened bank accounts at Bank 1, Bank 2, Bank 3, and Bank 4 in the name of FAR.

62.    CONSPIRATOR 2, VILLAFRANCA, and their conspirators deposited and caused the deposit of funds and withdrew and caused the withdrawal of cash in the following amounts, among other deposits and withdrawals:

16

| Approximate Date | Bank | Account Number | Amount | Withdrawal or Deposit |
|---|---|---|---|---|
| April 5, 2019 | Bank 4 | x0971 | $33,880 | Deposit |
| April 10, 2019 | Bank 4 | x0971 | $20,000 | Cash Withdrawal |

63.     I analyzed records obtained from FINCEN. I learned that from 2018 through 2019, CONSPIRATOR 2, VILLAFRANCA, and their conspirators cashed and caused to be cashed approximately $11,304,045 through FAR bank accounts. VILLAFRANCA and CONSPIRATOR 1 caused the cash to be counted into envelopes and provided back to the subcontractors.

## EZM

64.     A review of bank records indicates that CONSPIRATOR 3 opened bank accounts at Bank 1, Bank 2, Bank 3, and Bank 4 in the name of EZM.

65.     CONSPIRATOR 3, VILLAFRANCA, and their conspirators deposited and caused the deposit of funds and withdrew and caused the withdrawal of cash in the following amounts, among other deposits and withdrawals:

| Approximate Date | Bank | Account Number | Amount | Cash Withdrawal or Deposit |
|---|---|---|---|---|
| February 7, 2019 | Bank 3 | x1204 | $51,416 | Deposit |
| February 11, 2019 | Bank 3 | x1204 | $30,000 | Cash Withdrawal |
| February 15, 2019 | Bank 3 | x1204 | $70,054 | Deposit |
| February 20, 2019 | Bank 3 | x1204 | $50,000 | Cash Withdrawal |

17

| Approximate Date | Bank | Account Number | Amount | Cash Withdrawal or Deposit |
|---|---|---|---|---|
| March 8, 2019 | Bank 3 | x1204 | $47,047 | Cash Deposit |
| March 11, 2019 | Bank 3 | x1204 | $40,000 | Cash Withdrawal |
| March 14, 2019 | Bank 3 | x1204 | $42,578 | Deposit |
| March 18, 2019 | Bank 3 | x1204 | $80,000 | Deposit |

66.    I analyzed records obtained from FINCEN. I learned that from 2019 through 2020, CONSPIRATOR 3, VILLAFRANCA, and their conspirators cashed and caused to be cashed approximately $23,050,688 through EZM bank accounts. VILLAFRANCA, CONSPIRATOR 1, and their conspirators caused the delivery of cash back to the subcontractors.

## ODZ

67.    A review of bank records indicates that CONSPIRATOR 4 opened bank accounts at Bank 2, Bank 3, and Bank 5 in the name of ODZ.

68.    CONSPIRATOR 4, VILLAFRANCA, and their conspirators deposited and caused the deposit of funds and withdrew and caused the withdrawal of cash in the following amounts, among other deposits and withdrawals:

| Approximate Date | Bank | Account Number | Amount | Cash Withdrawal or Deposit |
|---|---|---|---|---|
| September 3, 2020 | Bank 3 | x0628 | $160,244 | Deposit |
| September 4, 2020 | Bank 3 | x0628 | $80,000 | Cash Withdrawal |
| September 8, 2020 | Bank 3 | x0628 | $60,600 | Cash Withdrawal |

69.     I analyzed records obtained from FINCEN. I learned that from 2020 through 2021, CONSPIRATOR 4, VILLAFRANCA, and their conspirators cashed and caused to be cashed approximately $10,244,822 through ODZ bank accounts. VILLAFRANCA, CONSPIRATOR 1, and their conspirators caused the delivery of cash back to the subcontractors.

## CAO

70.     A review of bank records indicates that OSEGUERA opened bank accounts at Bank 1, Bank 2, and Bank 3 in the name of CAO.

71.     OSEGUERA, VILLAFRANCA, and their conspirators deposited and caused the deposit of funds and withdrew and caused the withdrawal of cash in the following amounts, among other deposits and withdrawals:

| Approximate Date | Bank | Account Number | Amount | Cash Withdrawal or Deposit |
|---|---|---|---|---|
| December 4, 2020 | Bank 3 | x1405 | $50,000 | Deposit |
| December 7, 2020 | Bank 3 | x1405 | $81,500 | Deposit |
| December 10, 2020 | Bank 3 | x1405 | $10,000 | Cash Withdrawal |
| December 11, 2020 | Bank 3 | x1405 | $50,000 | Cash Withdrawal |
| December 12, 2020 | Bank 3 | x1405 | $15,000 | Cash Withdrawal |
| February 19, 2021 | Bank 3 | x1405 | $40,000 | Cash Withdrawal |
| March 12, 2021 | Bank 3 | x1405 | $20,000 | Cash Withdrawal |
| September 3, 2021 | Bank 3 | x1405 | $30,000 | Cash Withdrawal |

| Approximate Date | Bank | Account Number | Amount | Cash Withdrawal or Deposit |
|---|---|---|---|---|
| November 13, 2021 | Bank 3 | x1405 | $25,000 | Cash Withdrawal |
| November 19, 2021 | Bank 3 | x1405 | $40,000 | Cash Withdrawal |

72.    I analyzed records obtained from FINCEN.  I learned that from 2020 through 2022, OSEGUERA, VILLAFRANCA, and their conspirators cashed and caused to be cashed approximately $3,800,537 through CAO bank accounts and other check cashing businesses.  VILLAFRANCA, CONSPIRATOR 1, and their conspirators caused the delivery of cash back to the subcontractors.

73.    I reviewed IRS records that include, among other things, tax returns, tax forms, and account transcripts contained in various IRS databases.  Based on the investigation conducted to date, VILLAFRANCA, FLORES, and OSEGUERA conspired with others, known and unknown, to defraud the United States by impeding, impairing, obstructing, and defeating the lawful government functions of the IRS in the ascertainment, computation, assessment, and collection of federal income and employment taxes.

74.    The conspirators, and others known and unknown, concealed their scheme and defrauded the IRS by creating an off-the-books cash payroll.

75.    CONSPIRATOR 1, FLORES, CONSPIRATOR 2, CONSPIRATOR 3, CONSPIRATOR 4 and OSEGUERA agreed to act as owners of the shell

companies and cause the filing of false tax documents with the IRS to conceal the off-the-books payroll scheme, as set forth below:

    a. VILLAFRANCA caused FLORES, CONSPIRATOR 2, CONSPIRATOR 3, CONSPIRATOR 4 and OSEGUERA to have CONSPIRATOR 5 prepare the shell companies' tax returns and tax-related documents.

    b. A review of subpoenaed records and witnesses' statements led me to understand that CONSPIRATOR 5 provided bookkeeping services to the shell companies and used the records he created to prepare and cause the filing of false tax documents with the IRS. CONSPIRATOR 5 confirmed this during his proffers with IRS agents.

    c. A review of IRS records indicates that the conspirators made minimal employment tax deposits to create the appearance that the shell companies were operating legitimately and conceal their fraud scheme from the IRS.

    d. The conspirators filed and caused the filing of false individual income tax returns with the IRS to create the appearance that the shell companies were operating legitimately and conceal their fraud scheme from the IRS.

76.    The conspirators met to discuss grand jury subpoenas issued in conjunction with an ongoing criminal investigation and then created false documents and provided those false documents to the grand jury in response to the subpoenas.

77.    Based on the sum of the evidence collected in the IRS's investigation the conspirators took the following steps in furtherance of their conspiracy:

78.    The conspirators set up IRS EFTPS accounts for each of the shell companies. Using this system, the conspirators made minimal employment tax payments to the IRS on behalf of the shell companies.

79.    On or about February 12, 2019, VILLAFRANCA, CONSPIRATOR 5, and CONSPIRATOR 2 filed and caused the filing of a false 2018 Form 1096 on behalf of FAR. This form reported the issuance of twenty-one Forms 1099-MISC by FAR to construction businesses totaling $12,405,321. This Form 1096 was false, as were the Forms 1099-MISC attached to the Form 1096. FAR never paid the construction businesses it claimed to have paid on the Forms 1099-MISC.

80.    On or about February 27, 2019, VILLAFRANCA, CONSPIRATOR 5, and FLORES filed and caused the filing of a false 2018 Form 1096 on behalf of ADD. This form falsely reported the issuance of twelve Forms 1099-MISC by ADD to subcontractors totaling $12,334,216. This Form 1096 was false, as were the Forms 1099-MISC attached to the Form 1096. ADD never paid the construction businesses it claimed to have paid on the Forms 1099-MISC.

81.    On or about the approximate dates listed below, the conspirators filed and caused the filing the following false and misleading returns for the year and quarters as follows, each filing constituting a separate act:

22

| Act | Approximate Date Filed | Shell Company | Return | Year/Quarter Ending |
|-----|-----------------------|---------------|--------|---------------------|
| (a) | 10/31/2016 | MZA | Form 941 | 09/30/2016 |
| (b) | 4/15/2017 | MZA | Form 1120-S | 2016 |
| (c) | 4/30/2017 | MZA | Form 941 | 03/31/2017 |
| (d) | 1/31/2018 | MZA | Form 940 | 2017 |
| (e) | 4/03/2018 | MZA | Form 1120-S | 2017 |
| (f) | 4/03/2018 | ADD | Form 1120-S | 2017 |
| (g) | 8/20/2018 | ADD | Form 941 | 06/30/2018 |
| (h) | 10/31/2018 | FAR | Form 941 | 09/30/2018 |
| (i) | 1/31/2019 | FAR | Form 941 | 12/31/2018 |
| (j) | 1/31/2019 | FAR | Form 940 | 2018 |
| (k) | 1/31/2019 | ADD | Form 940 | 2018 |
| (l) | 3/18/2019 | FAR | Form 1120-S | 2018 |
| (m) | 4/16/2019 | MZA | Form 1120-S | 2018 |
| (n) | 4/22/2019 | ADD | Form 1120-S | 2018 |
| (o) | 9/10/2019 | EZM | Form 941 | 6/30/19 |
| (p) | 10/31/2019 | EZM | Form 941 | 9/30/19 |
| (q) | 1/31/2020 | EZM | Form 940 | 12/31/2019 |
| (r) | 1/31/2020 | EZM | Form 941 | 12/31/2019 |
| (s) | 4/30/2020 | EZM | Form 941 | 03/31/2020 |
| (t) | 5/27/2020 | EZM | Form 1120-S | 2019 |
| (u) | 7/31/2020 | EZM | Form 941 | 06/30/2020 |
| (v) | 10/31/2020 | ODZ | Form 941 | 09/30/2020 |
| (w) | 3/02/2021 | ODZ | Form 940 | 2020 |
| (x) | 3/01/2021 | ODZ | Form 941 | 12/31/2020 |
| (y) | 3/30/2021 | ODZ | Form 1120-S | 2020 |
| (z) | 10/13/2021 | CAO | Form 1120-S | 2020 |

82.    After the service of grand jury subpoenas on ADD, FAR, EZM, and CONSPIRATOR 5, the conspirators met at the home of VILLAFRANCA to coordinate how to further conceal the conspiracy and decide what to create and produce in response to the grand jury subpoenas.

23

83.    In response to the grand jury subpoenas, the conspirators created and caused the creation of false documents and produced those false documents to the grand jury. These false documents purported to support the false 2018 Forms 1096 and associated Forms 1099 filed by ADD and FAR.

84.    After the service of a grand jury subpoena on ADD, FLORES made false statements to a Special Agent of the IRS to further conceal the conspiracy.

### Conclusion

85.    Based on the foregoing facts, I submit that probable cause exists to conclude that: between in or around 2015 through at least 2022, in or around Orlando, Florida, within the Middle District of Florida, VILLAFRANCA, FLORES, and OSEGUERA (1) conspired with individuals, known and unknown, to operate an unlicensed money transmitting business, in violation of 18 U.S.C. § 371 with 18 U.S.C. §§ 1960(b)(1)(A), 1960(b)(1)(B), and 1960(b)(1)(C) objects; and (2) conspired with individuals, known and unknown, to defraud the United States by impeding, impairing, obstructing, and defeating the lawful government functions of the Internal Revenue Service of the United States Department of Treasury in the ascertainment, computation, assessment, and collection of federal income and employment taxes, in violation of 18 U.S.C. § 371.

86.    This completes my affidavit.

_____
Jennifer Rey, Special Agent
IRS Criminal Investigations

Sworn to and subscribed before me
This 17th day of April, 2025

_____
HON. ROBERT M. NORWAY
United States Magistrate Judge

25